We have a motion from the Uniformed Firefighters versus Mayor DeBlasio, the New York Times, and the New York Civil Liberties Union. We'll hear first from the appellant, the union. Good morning. Council, do you want to retain some time for rebuttal? Yes, proceed. Thank you, and may it please the court, and good morning. My name is Courtney Selesky from DLA Piper, and we represent the plaintiff's appellants in this case. Our clients are unions that represent active and retired police officers, corrections officers, and firefighters. We're here to request that this court enter a stay pending appeal of this case on the merits. It's a narrow question about whether the district court had power to enjoin the New York Civil Liberties Union, which had received 81 records regarding 81,000 retired and active officers from the CCRB. Council, they received that before any order was in place. Isn't that correct? That's correct, Your Honor. How could they be bound by it? Thank you for your question, Your Honor. That is exactly the main issue that led the district court astray, in our opinion. So the district court found that there was active concert between NYCLU and the CCRB, but that concert happened before the order, like Your Honor asked. But just a second. Is your concert based, your argument of concert, based on the fact that the but didn't they respond to everyone else's FOIA request with the same quick response? That's one of a number of things that led the court to find that there had been active concert. And so just to take a few different things that Your Honor had mentioned, we became aware during the July 28th hearing or right before through a letter that yes, the CCRB was responding to other FOIA requests quickly as well. So where is the concert? I mean, you imply that there was something really malevolent about the CCRB responding to this perfectly legitimate request for public information. Timing is only one of the things. So on the record, as the district court found, the active concert is based on a number of things, including from the very beginning, as Mr. Dunn has stated in his affidavit, the NYCLU has been actively involved in the oversight and related to CCRB and the close relationship between and among them. The timing related to this FOIA request is, yes, one thing. The FOIA request was directed to the director of the CCRB, not the FOIA officer. The FOIA request was responded to for the records of 81,000 police officers, like no other. The others were more limited in scope, and it was in less than three business days. There are a number of things here in this record that led the court to find that there had been active concert. And that finding was not clearly erroneous on this record and your honor. And so she made, wait a minute though, she made that finding before the, she read the papers, the papers came in the next day pointing out that they didn't know about the order. So she made the finding really under a misapprehension of the facts. As soon as she knew that the distribution of the data had occurred before the entry of the order, she quite, it looked like quite properly changed her mind. So what's wrong with that? So the problem with that, your honor, is that the order is not this positive issue here. So the district court- Of course it is. You're saying that they're an active concert and under 65D, that ruling, that rule says you can't be an active concert, or at least the case law under it all says you can't be an active concert if you don't even know about the order. And they couldn't know about the order when the distribution was made because it hadn't been entered. Isn't that so? So the active concert is to unlawfully release unsubstantiated and non-final allegations because it violates- Oh, wait a minute. Say that again. The active concert is the scheme to unlawfully release unsubstantiated- No, no, no. You're not dealing with my question, I believe. My question was, isn't it so that you cannot be an active concert with a party subject to an order if you didn't know there was an order and you accept that proposition? Certainly under the contempt cases. So if it's about a violation of an order- Under every case, you can't be an active concert with someone if you don't even know there's an order. This is not just past active concert, though. It's present active concert. And if I could just- But you're still, like, it's a question. Isn't it so you cannot be an active concert with someone for purposes of 65D unless you know about the order? Isn't that the law? I think it's correct, Your Honor, that you cannot- So if that's the law, isn't it also so that when this distribution of data happened, the NYCLU didn't know about the order for the obvious reason it hadn't yet been entered? When they requested the FOIL- When they got the material, never mind the FOIL request, when they actually got the material, the order hadn't been entered. That's correct, Your Honor, factually. That's correct. Well, then, if they- Then, obviously, they didn't know about the order because it hadn't been entered. And if you can't be an active concert unless you know about it, what's left of your claim? Because it's broader than that. The active- Well, you can say it's broader, but you've got the law of Rule 65D, and you can't just say it's broader. That's what 65D and the case law under it says. But there's present concerted action to enjoin. So- As of what date? As of the date of the order. So there's the scheme between- But the distribution had already been made. The scheme is to publish the allegations that would not otherwise be allowed to be published by the CCRB. And the active concert is to get to the point of publication. And that is where the Are you now saying they got the material properly, but they can be enjoined from distributing it? Is that your theory? They can be enjoined from distributing it because it is part of the unlawful scheme to distribute- Even though they got it lawfully. They got it in response to a FOIA request. We don't dispute that. But- Well, not only in response to a FOIA request, but they got it before the state court order was entered. Isn't that right? That's correct, Your Honor. There were discussions ongoing between and among the attorneys for the plaintiff appellants and the city around the time that this was distributed. And the CCRB was on notice that there was a forthcoming- All right. So if we've established they got it before the order was entered, and you have to know about an order in order to be an active concert, where's the violation of 65D? The active concert and the violation would be in the final publication after the order has been in place. And what case possibly says that, that you got material lawfully, but you can later be enjoined from making it public? Most of the cases are about contempt. So we don't have a case that's exactly on point, Your Honor. Do you have any case that's even close? I'm not aware of a case that's like ours, Your Honor. Well, why should this be, out of the whole world, be the first one to suddenly say a party that didn't know about an order and got the material lawfully shouldn't be able to make any use of it at once? The knowledge requirement is not necessarily this positive in this case. Well, they can't be in concert if they don't know. That's the knowledge requirement. They have to know what they're doing. They have to be in concert with someone else. In Eli Lilly, it was not necessary that the active concert, the court found, was that you had to know that you were aiding and abetting in those circumstances. This is an unusual... Well, if that's your big case, I didn't understand that was your main case or even one of them. In that case, did they get the material before the order was entered or after? I believe they got it after, Your Honor, but I would have to go back. How does that possibly help you? Your Honor, this is an unusual scheme that goes from start to finish to do what the CCRB could not do. The reason why this case is special is because we have these officers whose rights will be irreparably harmed if this is released. This all happened in the course of three... You may have a good claim on some irreparable injury. I guess that'll be debated. What we're on is not only whether you have a substantial probability of success, do you have any probability of success if all the law is against you? Obviously, Your Honor, we disagree that all the law is against us and that this is a case... I've been asking you now for several minutes for your case that says that what you're saying is correct. You've given me one case. When I asked you about that, you said, oh no, they got their material after the order. We're still looking for that case where they violated 65B and got material before the order and you haven't given us one. I'm not surprised because I don't think there is one. I'll just say that the case law in this area is generally about contempt cases and that's always after there's an order and we just have a different scenario here. But there's plenty of law that says to be in active concert, you must know about the order, knowledge of the order. That's the first predicate to acting in concert with a party who is a defendant in an injunction suit. Your Honor, I see... I'm happy to continue to answer questions, but I see I'm over my time. If I could reserve... Counsel, I have a question about the 81,000 names. We're told in the papers that it's a spreadsheet. Does it list the officers by name? It does, Your Honor. If there are no further questions, you've reserved a couple of minutes for rebuttal. Let's turn to the other parties or interveners. Next on my list is the New York Times. Yes. Good morning, Your Honors. I'm Alexandra Perloff-Giles for the New York Times. I'm here with my colleague, David McCraw. May it please the Court. I plan to address the First Amendment  and the City will address the other issues in the case. The unions have come before this Court seeking an indefinite prior restraint on publication of newsworthy information about a topic of national importance that is plainly unconstitutional. As the Supreme Court held nearly 50 years ago in the Pentagon Papers case, any system of prior restraints are permitted only where publication will surely result in direct, immediate, and irreparable damage to our nation or its people. Although the publication of the names result in irreparable damage to the officers listed? I don't think so, Your Honor, for a few reasons. This kind of information is routinely disclosed. When New York State repealed Civil Law, the majority of other states that already permit disclosure of law enforcement personnel records, and there's no indication that disclosure of those records has jeopardized law enforcement safety in any way. The same is true in New York where some law enforcement records have previously been released. In the Reporters Committee's amicus brief, they note that BuzzFeed published in 2018 from an unidentified source 1,800 officer disciplinary records, and ProPublica obtained a subset of the database that's at issue here and published on July 26th complaints involving 4,000 officers, both substantiated and unsubstantiated. And again, there's no indication that disclosure has caused any kind of harm, let alone harm that is direct, immediate, and irreparable of the kind necessary to justify prior restraint. I don't believe there's a privacy interest in their name, their rank, their precinct. All of that is public information. Although it is sort of like toothpaste out of the tube if we list a complaint that is unsubstantiated and an officer's reputation and career is damaged. That's the argument that they make. Isn't it true? Well, certainly, Your Honor, I think in every prior restraint case, once you have publication, it's toothpaste out of the tube, and yet the standard remains very high for imposing a prior restraint. And I think the other point I would make is in the In Re Providence Journal case that we cite in our papers, the First Circuit there suggested that a privacy interest does not rise to the same level as the kinds of national security interests or Sixth Amendment interests that may justify a prior restraint under the Supreme Court's case law. The First Circuit explained that an individual's right to protect his privacy from damage by private parties, although meriting great protection, is simply not of the same magnitude. We have not found any case upholding a prior restraint issue to protect Fourth Amendment rights. Counsel, I can appreciate that the New York Times is particularly interested in the First Amendment issue. That doesn't surprise me. But I'm wondering, do you really want this court to opine on a constitutional issue when the Rule 65e power of the court issue is sitting there ready to be decided? Your Honor, I think this court can rule on any basis supported by the record. There's no question we can, but isn't there, you know, let's say, abundant law, perhaps overwhelming, that any court ought not to reach a constitutional question if a non-constitutional issue disposes of the case? Isn't that the law? Certainly, and I think under the, under the- And then I understand you want to, I get you filed a nice brief on the First Amendment, you do that regularly, that's fine. But once it comes down to urging a court what to do, it seems to me, frankly, you take a risk with your own interest to order them the way you do. What if we rule against you on the prior restraint issue? We will have made law adverse to your position quite unnecessarily. Well, well, we hope that won't be the case, but there are arguments in the alternative. I know, and you hope that, and you can avoid that by saying to us that while you have a First Amendment, you have a constitutional issue, which for all you know, might come out against you. We believe that the, the prior restraint arguments here are, are very strong and that the union- I understand you do that, and the Times says that quite properly in scores of cases. But when they, but you could always say to a court, as I'm inviting you to say, but I'm getting a little resistance, that's all right. You could always say there is a prior restraint, and that is the 65D argument correct. Indeed, you could even support the 65D argument if you wanted to, although the others have made a pretty good argument. We certainly agree, Your Honor, that this court need not reach the First Amendment issue if it decides it on Rule 65 grounds, and I'm happy to, to cede the floor to my colleagues at the NYCLU who will argue that part of the case. Okay, thank you. All right, moving on. Thank you, counsel. We'll turn to the NYCLU counsel. Good morning, Molly Bicklin for the New York Civil Liberties Union. As Your Honor has recognized, the unions cannot succeed on the merits, and Rule 65D disposes of this issue. It is a narrow exception to the rule that a court can bind only the parties before it, and it does not authorize relief against the NYCLU here, given the undisputed facts that no judicial to the NYCLU's FOIL request, and therefore this can end the court's inquiry into the scope of Rule 65. And so I'd like to turn to the questions about irreparable harm. The union's claim of irreparable harm is a generalized claim about current hostility toward police officers that simply is not sufficient for certainly a prior restraint or even for a stay under the traditional stay factors. And in fact, the record is clear that the CCRB has produced numerous data sets, officer histories in the weeks after the repeal of Section 50A. And as my colleague from the New York Times mentioned, ProPublica has published a significant part of this data set involving over 4,000 officers, which has led to numerous news articles. But the unions do not point to any harm arising from these disclosures. Further, the unions have not pointed to any incidents in other states connected to this type of disclosure, although many states regularly disclose this type of information. And their claimed reputational harm is both highly speculative and cannot justify an injunction. As this court has found, damages would be the only remedy. But in fact, the actual harm here that is shown by the record is plainly to the NYCLU and to the public interest. The NYCLU has been barred since July 22nd, almost a full month, from publishing this information about civilian complaints, police misconduct, CCRB investigations, and NYPD disciplinary practices during a time of great national and local debate over these very issues. And as the Supreme Court has found for much lesser delays, this is an intolerable burden on the NYCLU's First Amendment rights at a time when these are the very issues of the day. And moreover, this is the exact type of information that sheds light on public officials and the workings of government that is of great public value. And any further delay on publication greatly deserves the public interest. Can you just marshal for me the, quickly please, the timing of the request and the response from those who responded and provided all the records? Yes, Your Honor. For the NYCLU, it submitted its FOIL request on July 9th and received a response on July 14th. Have you ever gotten anything that fast? Personally, I cannot say that I have, but what the record shows... Has the NYCLU ever gotten anything that quickly pursuant to a FOIL request? I don't have that information before me, Your Honor. But what I can say is that the record here is very clear that this kind of alacrity was quite normal for the CCRB in the month after the were within three business days or fewer. Okay. Thank you. I guess maybe the city will enlighten us, but I'm going to ask you in any event. Do you know what the city means with the phrase, a substantiated but unproven allegation? Do you know what that means? I will defer to the city on this, but my understanding is that it means that the CCRB has found some kind of cause to believe that the conduct as alleged, right, the complaint from the civilian occurred, but that perhaps it was not a violation of the patrol guide. We'll ask the city for the definition. Thank you, counsel. Let's turn to the city. Okay. Good morning, Your Honors. May it please the court, Lena Drucker on behalf of the city. Your Honors, 58 was repealed amid historic levels of public engagement in June 2012, and the unions were aware of it. They were involved in the legislative process, and they did not bring this lawsuit. According to their own complaint, paragraph 36, they say that four days later, Mayor de Blasio announced the city's intention to release unsubstantiated, complete records, four days later, but they didn't sue for an entire month. They could have brought their lawsuit right after the state legislature repealed 58, couldn't they have? That's exactly what I'm saying, Your Honor, and having failed to do that, they now want to ask this court to put them in the position as though they had, and they want to do that by insinuating some wrongdoing on the part of the CCRB. In the month following the repeal, the CCRB responded to over 50 nearly identical types officer history complaint FOIA requests, and it did so on an extremely fast basis, recognizing the great sense of public urgency for transparency at this time, and it did so, many of these data sets faster than what produced to NYCLU, and to then, not only that, on July 8th, the CCRB had a public board meeting open to the public, where they declared that they were going to make the entire data set public through a portal online, and the union still didn't sue. They waited until these productions were finished, and unbeknownst to them, but they waited and waited and sat on their hands until finally six, more than six days after that public board meeting, they brought this lawsuit screaming foul that the CCRB had consistently been providing the public with the information that it was lawfully requesting on a lawful basis, and so now they've attempted to recast this narrative to suggest some wrongdoing by the CCRB based on the swiftness of its of its responses, and that's just not a cause for concern. It's a cause for celebration. Likewise, after the public board meeting where the announcement was made were these records disclosed? Four days, your honor. The public board meeting took place on July 8th. The following day, NYCLU, whose executive director was at the board meeting and heard about this, requested that same data set, which made the production so very easy because the data set was already assembled for the board meeting and displayed for the public, so all the CCRB needed to do was take that same data set. By data set, I mean an Excel spreadsheet. Was it displayed? You said it was displayed for the public, I assume public attending the meeting. Was it made otherwise publicly available? Not at that time, no, your honor. It was made public through, I think there was a Zoom, we were in the midst of the same pandemic, so it was a Zoom meeting and the information was displayed for the public showing the rows and the information that would be disclosed once the the next day, NYCLU made its request. Several days later, the city responded to NYCLU's request and then the unions went to court and got an injunction, which currently still enjoins the CCRB from launching its database. Was it your goal to have a publicly searchable database so that any citizen could log on and search the database? That is my understanding of both what the intention had been prior to this lawsuit, yes, your honor. Is it correct that the Legal Aid Society was given this same data set? I think given is not quite the right word, but yes, the Legal Aid Society now has the exact same database. If you look, the explanation for how all that happened is on the southern district docket. It's item number 31, but in short, the acting and concert, they saw an opportunity to view the database, and so July 14th, before this lawsuit was instituted, CCRB showed them the database and inadvertently disclosed a link which allowed that information to be taken by the Legal Aid Society, but that information is publicly now in the hands of many others other than NYCLU, but this restraint seems to only apply at this juncture tonight based on this insinuation by the union that the CCRB did something wrong, which is incorrect, and that's what we're here to correct. I think, as I see, I am running out of time, so let me just say that there was no wrongdoing on the part of CCRB. I'm happy to answer any questions that the court has, and otherwise, we rest on our breath. Thank you. Thank you, counsel. We'll turn back to the representative of the unions who reserved two minutes for rebuttal, or three minutes, it turns out. Thank you, sir. Thank you. So I just want to start with the repeal of 50A. When 50A was repealed, that did not repeal all these other rights that are at issue in the lawsuit below, and that includes that there are collective bargaining rights that are implicated that are set to be arbitrated by the unions. That includes due process rights, privacy rights. I mean, the CCRB itself had recognized that the disclosure of unsubstantiated or unfounded allegations would violate, would be an unwarranted invasion of privacy for these officers prior to the repeal of 50A, having nothing to do with 50A. So all those claims are claims that you may be able to establish against a party. The issue which I think we've been focusing on is why you think you have, I guess you've told us why you think, but whether you are correct in thinking that you can get a federal court to enjoin a non-party on a theory of concerted action with respect to an order of which they had no knowledge at the time they got the data. So the fact that you have claims that you're prepared to prove against a party really doesn't answer that threshold question as to a non-party. I agree, your honor. My only point with that is that there's this narrative that the lawsuit should have been brought on June 13th because 50A was repealed, but this action by CCRB that was revealed only on July 28th to us was actually very shocking both to us and the court, and no other defendant in this case has been responding to FOIL requests like this because every other defendant in this case recognizes that these are tough issues that may violate certain rights that are an issue in the underlying lawsuit. That's my only point with that. With respect to what your honor has raised, I know I had raised the irreparable harm and Judge Newman, you had reacted to that. I just wanted to point out that under this court's cases like FAPA versus Gonzalez, the probability of success is inversely proportional to the amount of irreparable injury, which we have significant here. But to get to the heart of your honor's questions, this is just a different case because we're not talking about an order where we have contempt. We're talking about active participation that continues to this day to violate our client's rights. When you have a TRO, we're required to give notice before the lawsuit is with the Corp Council with the notice that we were required to provide during the time that this FOIL request was responded to. And CCRB is basically using the New York Civil Liberties Union to violate rights that it cannot violate, and it was trying to avoid the forthcoming order. And we have a situation here where the active concert continues. When you say using them, are you suggesting that the board invited the NYCLU to come in and make the request when you say they used them? I don't have information on that, your honor. But in what sense did they use them? Well, we think that they gave them their whole database after showing it to them so that they Clearly they gave it to them, and that's what you meant by use them. They used them as a recipient of something they asked for. That was the use. They're using them to publish what they cannot lawfully publish. Why can't they lawfully publish it? The CCRB can't lawfully publish it because it would violate collective bargaining rights. It would violate due process of our clients. What due process rights? So there's the stigma plus claim that's in our papers. But it does violate the collective bargaining agreement in some way? It does. There are provisions in the collective bargaining agreement that give members of the NYPD certain rights to request that exonerated or unfounded allegations are removed from their personnel files and publishing them in this way would just completely obliterate those rights. They filed grievances and they're set to have arbitrations as soon as they're scheduled. Counsel, I have the sponsor memo that you directed us to in your proposition filed yesterday. And it reports from the sponsor that FOIL already provides that agencies may redact or withhold information whose disclosure would constitute an unwarranted invasion of privacy. Isn't that correct? Are you saying that CCRB didn't do that? That's exactly right, Your Honor. And we've had certain discoveries since all of this was revealed to us that it's been described to us that the CCRB did not use all of those as discretionary, which they certainly are written that way in the FOIL law and in its discretion thought that it did not need to apply privacy exemptions under the circumstances, despite that everyone who's looked at this and even the sponsors who repealed it thought that was the way to protect the officers. And even if it is discretionary, I just don't want to rely on that. Like the CCRB can't about face arbitrarily and capriciously from its regular policies whereby it had previously cared about officer privacy. Under these circumstances, it's just putting out defamatory information about our clients. But if what you say is true, the NYCLU is an have with the CCRB? We don't have all of the information. What we would certainly like to know is what the conversations were like between the CCRB and the NYCLU, but whether or not they were an innocent bystander, they're basically being used by the CCRB to do what it cannot do. And under the circumstances, what we would like to do is have an opportunity to explore more what on there to understand the participation by the NYCLU and what the CCRB was saying. Well, I'm still troubled by your saying used. Are you suggesting that the CCRB somehow understanding that it could not release the data, got hold of the NYCLU and said, we've got some data you might like and just tell us where to send it. We'll give it to you. Is that what you're suggesting? I mean, look, I think it was more nuanced than that, your honor, but something along those lines. Well, what gives you, whether nuanced or not, what gives you any basis to think anything remotely like that happened? Well, the CCRB was doing presentations of what it thought would be its forthcoming database. And then it was alerted by the PBA, which is one of our clients, that this would be unlawful for them to make such disclosures. Then we started talking with the Corp Council about the forthcoming lawsuit. And when did those discussions occur with respect to when the TRO issued? So the TRO issued on the 15th. We were in emailing and in discussions on the 14th. And before the TRO issue? Yes. Yes. We filed our suit on the evening of the 14th, and we had given the 24 hours notice to the Court Council lawyers. And so this is all basically happening at the same time that we're talking to those lawyers and that the documents are produced to NICLU. And the meeting at which the CCRB said these documents will be made available was what July 8th? Six days earlier. Yes. Said that to whom? It was a public meeting at which the NICLU was represented. They said it publicly? They did. Well, again, you're not suggesting they called up or somehow contacted the NYCLU and said, we've got something you might like to know about. We don't know if there were private conversations like this, Your Honor. But it was public. You just described it as public. There was a public meeting that we have this database. No one else, as far as we know, asked for the entire database. But NYCLU did. And we have no idea whether CCRB said to them, hey, you know what? There's a lawsuit coming down the pike. You might want to get this now. We just don't know. That's quite a charge. We'll reserve decision on this. What is the status of the stay? Was it put in place until we decide? This court issued an administrative stay until... Right. So that our decision on the merits as well as the stay should be forthcoming. Thank you. Well, on that, let me just ask counsel, do you understand that the one-judge order continues to stay until the hearing of the motion or the disposition of today's motion? Our understanding was until the disposition of today's motion, but I can go back and check. Is that all your understanding? That nothing happens until this panel decides something? No. You're all on mute. So maybe you could unmute and answer, please. Councils? CCRB? I defer to the NYCLU since we don't have the document in question. Right. So NYCLU, is it your understanding you couldn't publish until this panel issues some sort of order? Yes, Your Honor. And is that also the understanding of the City of New York? Yes, Your Honor. I believe the order granting the automatic administrative stay says pending determination. Okay. All right. Thank you all very much for very lively and informative argument. We'll reserve decision.